In re BROOKS FASHION STORES, INC., et al., Debtors.

BROOKS FASHION STORES, INC., Plaintiff,

v.

MICHIGAN EMPLOYMENT SECURITY COMMISSION, Defendant.

Bankruptcy Nos. 87–B–12381 (CB) to 87–B–12385 (CB).
Adv. No. 90–6215A.

United States Bankruptcy Court, S.D. New York.

March 4, 1991.

Willkie Farr & Gallagher by Brian E. O'Connor, New York City, for debtors.

State of Mich. Atty. Gen. by Donna K. Welch, Detroit, Mich., for Michigan Employment Sec. Com'n.

## DECISION ON DEFENDANT'S MOTION FOR DISMISSAL AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

### FACTS

On December 7, 1987 (the "Filing Date"), Brooks and several of its affiliates (collectively, "Brooks" or "Debtor") filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Code"). The Debtors included Alberts, Inc., which owned stores doing business in Michigan.[1] The Debtors remained in possession of their properties and managed their businesses pursuant to §§ 1107 and 1108 of the Code.

On May 20, 1988, this Court set August 31, 1988, as the bar date for filing proofs of claim. The Bar Date Order stated that all "non-filed claims shall be deemed dis-charged upon the confirmation of a plan or plans of reorganization." Notice was to be made by mail to all known creditors and a copy of the Notice was to be published once, no later than August 1, 1988. The Notice by Publication appeared in each of the following: (1) the national edition of *The New York Times* on June 14, 1988, (2) the national edition of *The Wall Street Journal* on July 5, 1988, and (3) *Women's Wear Daily* on July 25, 1988.

On March 23, 1989, this Court issued and entered a Confirmation Order (the "Confirmation Order"), confirming the chapter 11 plan. The Confirmation Order provides, in pertinent part:

¶ 13. Except as otherwise provided in the Plan and subject to the occurrence of the Effective Date, entry of *this Order acts as a discharge and release of any and all Claims and Debts against a Debtor that arose at any time before the entry of this Order,* including, but not limited to, all debts specified in sections 502(g), 502(h) and 502(i) of the Code. *The discharge of each Debtor shall be effective as to each Claim, regardless of whether a proof of Claim therefor was filed or* deemed filed, whether the Claim is an Allowed claim, *whether the holder of a Claim or interest actually received notice of the Confirmation Hearing, . . . .*

¶ 14. Except as otherwise provided in the Plan, pursuant to Section 524 of the Code, the commencement of or continuation of any action, the employment of process or any act to collect, recover or offset *any debt, obligation, liability or claim that arose before entry of this Order,* as a personal liability of a Debtor, or from property of such Debtor, *is permanently enjoined . . . .*

¶ 19. All final requests for payment of administrative expenses pursuant to section 507(a)(1) of the Code . . . including applications of entities *entitled to*

---

1. Alberts was dissolved on December 29, 1989, and all its assets were assigned and transferred to Brooks at that time.

*payment under section 503(b)* of the Code must be filed and served on respective counsel for the Debtor and the Office of the United States Trustee within forty-five (45) days after the Effective Date.

Confirmation Order at ¶¶ 13, 14 and 19 (emphasis added).

On or about November 27, 1989, almost two years after Alberts' chapter 11 filing, over one year after the bar date, and eight months after the entry of the Confirmation Order, Alberts was notified, for the first time, that the Michigan Employment Security Commission ("MESC") was reassessing Alberts' unemployment tax liability for 1986, 1987, 1988, and the first and second quarters of 1989 (the "Tax Period"). MESC is the Michigan taxing authority charged with administering Michigan's unemployment insurance system. MESC is an agency of the State of Michigan. Mich. Stat.Ann. § 17.501, *et seq.* (Callaghan 1989 & Supp.1990).

According to the Notice of Assessment, MESC claimed that Alberts owed it approximately $121,000 in principal and $32,000 in interest accrued for the Tax Period. The tax rate applied to Alberts was an experience-based rate. As the taxes came due during the Tax Period, Alberts fully paid MESC based upon tax rates listed in forms provided to Alberts by MESC. MESC, in its motion papers, admits that the forms did not contain the proper tax rates for the years in question. However, the rates assigned to Alberts were preceded by a "T," which designates the rate as a temporary rate pending establishment of final rate. MESC informs the Court that the forms which they provide are not binding determinations upon itself. Further, under Michigan law, MESC may redetermine paid taxes for the three years preceding the date of the redetermination.

On or about January 8, 1990, MESC sent Alberts a Final Collection Notice advising Alberts that it owed MESC approximately $150,000, for the Tax Period, and that Alberts failure to pay the alleged delinquency would result in collection action by MESC.

## THE PROCEEDINGS

On July 24, 1990, Brooks filed this Adversary Proceeding for declaratory and injunctive relief. The adversary complaint seeks to declare MESC's tax claims as discharged, and to enjoin MESC from any collection activity. MESC responded to the Complaint by filing an Answer on or about August 27, 1990. Two months later, on or about October 22, 1990, MESC filed a "Motion to Dismiss Adversary Proceeding." The grounds set forth, not too clearly, for dismissal include lack of personal jurisdiction and lack of subject matter jurisdiction. MESC supports its position with various arguments including Eleventh Amendment sovereign immunity from suit, insufficient notice, no proof of claim filed in the case, lack of post-confirmation jurisdiction *per se* (in addition to lack of preconfirmation jurisdiction) and lack of competence. Thereafter, on or about November 5, 1990, Brooks filed a responsive memorandum of law in opposition and a cross-motion for summary judgment.

In its response, Brooks argues that MESC's motion to dismiss should be treated on a summary judgment basis, since the Fed.R.Civ.P. 12(b) motion was submitted after the Answer to the Complaint. That is certainly a viable option when a 12(b)(6) motion is made after the Answer is filed. However, when a 12(b)(1) or 12(b)(2) motion is presented after an Answer, the applicability of a summary judgment standard is not so clear. For instance, it is hornbook law that a subject matter jurisdiction objection may be raised at any point in a proceeding, and is not waivable. However, it has been held that the filing of a 12(b)(1) motion after the Answer militates that the motion be treated as one for summary judgment under Fed.R.Civ.P. 56. *Litwhiler v. Hidlay*, 429 F.Supp. 984, 986 (M.D. Pa.1977). Other courts have determined that a summary judgment standard is appropriate when the jurisdictional basis of a claim is intertwined with the merits and the motion to dismiss asserts a factual attack on subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990). MESC admits this much in its reply

memorandum, and cites *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553 (9th Cir.1987), which states:

> [W]hen "ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment." ... Under this standard, "the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

*Id.* at 1558 (citations omitted).

However, MESC only concedes that the summary judgment standard should apply on the question of subject matter jurisdiction in relation to MESC's assertion of Eleventh Amendment immunity.

To complicate (or facilitate) matters, it must be remembered that the Debtor filed a cross-motion for summary judgment.

This Court will rule on MESC's motion to dismiss, but will not convert MESC's motion to one for summary judgment. Since the Debtor has made a motion for summary judgment, this Court is inclined to consider MESC's defenses of lack of *in personam* and subject matter jurisdiction as offered, since these defenses do not traditionally go to the merits. This is so, even though certain of MESC's grounds for challenging subject matter jurisdiction are intertwined with the merits of the action.

On the other hand, the Debtor's motion for summary judgment is appropriate because there are no genuine issues of material fact as to any element of Debtor's claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, Rule 56 of the Federal rules of Civil Procedure and Bankruptcy Rule 7056 apply to this matter.

## DISCUSSION

### I. *In Personam Jurisdiction*

MESC moves to dismiss this adversary complaint for lack of personal jurisdiction over MESC. However, the memo of law appended to the motion speaks of a lack of personal jurisdiction to decide this matter because MESC was never given mail notice of the order for relief. This Court believes that MESC either misunderstands *in personam* jurisdiction of the bankruptcy court or has misplaced its support in presenting its argument this way. Not being noticed with the order for relief has no bearing on this Court's personal jurisdiction over this adversary complaint.

■ Bankruptcy Rule 7004(d) provides for nationwide service of process. The Bankruptcy Rules were promulgated by the Supreme Court pursuant to authority granted by Congress in 28 U.S.C. § 2075. As such, the Rules have the force of law. As noted by Judge Brozman in *Teitelbaum v. Choquette & Co., Inc. (In re Outlet Co. Stores, Inc.)*, 82 B.R. 694 (Bankr.S.D.N.Y. 1988),

> Rule 7004(d) is fully in keeping with 28 U.S.C. § 1134(b), which confers on the district courts original but not exclusive jurisdiction of all civil proceedings with a nexus to a bankruptcy case, be those proceedings core or non-core. The statute is identical to former 28 U.S.C. § 1471(b). The legislative history to the latter statute made it clear that congress intended that the bankruptcy courts could be vested with *in personam* jurisdiction over defendants not otherwise amenable to suit in the federal courts.

*Id.* at 698 (citations omitted).

■ Since Congress has the power to provide for nationwide service of process, and has apparently vested that ability in the bankruptcy courts, no inquiry into due process or "minimum contacts" is required. It has no relevance when jurisdiction is conferred by federal statute. This broad jurisdictional grant is tempered by venue and abstention considerations which may be brought to the court's attention by the defendant. *Id.* at 699.

■ As for MESC's argument that this Court has no personal jurisdiction because of lack of mail notification of the order for relief in this case, MESC is misguided. As demonstrated above, this Court's *in per-*

*sonam* jurisdiction is based on service of this adversary complaint pursuant to Rule 7004(d), not MESC's prior actual notice *vel non* of this bankruptcy case. MESC's argument here is more properly directed at the substantive issue of whether or not it has a claim which was discharged by the confirmation of the plan.

II. *Subject Matter Jurisdiction—Core Proceeding*

MESC asserts that this Court does not have jurisdiction to hear this matter. MESC raises issues such as this Court's competence to rule on state tax issues, sovereign immunity (discussed *infra*), notice (discussed *infra*), and post-confirmation jurisdiction *per se* (discussed *infra*), as directed at this Court's jurisdiction, or lack thereof.

Chapter 6 of title 28 of the United States Code governs the designation and jurisdiction of bankruptcy judges. Original jurisdiction of all bankruptcy cases and proceedings is vested in the district courts pursuant to 28 U.S.C. § 1334. The district court may then refer to the bankruptcy court for its district all cases or proceedings arising under title 11. 28 U.S.C. § 157(a). In July 1984, Judge Robert J. Ward, United States District Judge for the Southern District of New York, issued the "Standing Order of Referral of Cases to Bankruptcy Judges." This Order referred all cases and proceedings arising under title 11 to the bankruptcy court to the maximum extent permitted by 28 U.S.C. § 157(a).

Bankruptcy judges may hear and enter final judgments in all cases arising under title 11 and in all core proceedings. Related, non-core proceedings may also be referred to the bankruptcy judge, but not for final disposition, unless the parties expressly consent. Here, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court, which may review *de novo* any matter objected to in a timely fashion. 28 U.S.C. § 157(c)(1) and (2).

 Section 157 of title 28 does not explicitly define "core proceedings," but provides a non-exclusive list of matters within its embrace. 28 U.S.C. § 157(b)(2)(a)–(*o*). A proceeding is core pursuant to § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987); *see also In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1990). The gravamen of this adversary proceeding is such a core proceeding. This Court is asked by the Debtor to declare that any claim of MESC has been discharged by the confirmation of the chapter 11 plan herein, and that MESC is enjoined from seeking to collect on any pre-confirmation debt. Although MESC's tax assessment is based on state law, because the assessments relate to both pre-petition and pre-confirmation tax years, the ability to collect on that debt goes to the validity of the plan's confirmation, which purports to discharge debts not provided for therein. Therefore, the gravamen of the Debtor's complaint strikes at the heart of this Court's power to confirm and discharge under the Code.

 Pursuant to Bankruptcy Rule 3020, bankruptcy courts retain jurisdiction over the post-confirmation administration of the estate until the entry of a final decree. *See In re Almarc Corp.,* 94 B.R. 361, 364 (Bankr.E.D.Pa.1988); Bankr.Rule 3022. Bankruptcy courts retain jurisdiction over a chapter 11 case after confirmation, "to protect its [confirmation] decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation." *Almarc,* 94 B.R. 361, 364 (citing *In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2d Cir.1966)). In the case, *sub judice,* the outcome of the dispute will more than conceivably have an effect on the administration of the estate and the consummation of the plan; the debts at issue arose pre-petition and pre-confirmation. This issue is "core" because it will affect administration of the estate. Any distributions to MESC necessarily alter the confirmed plan of reorganization, and would thereby reduce distributions received by creditors. Additionally, this Court has retained jurisdiction to resolve disputes and

controversies regarding the plan and confirmation pursuant to the Confirmation Order. Confirmation Order at ¶ 18.

Accordingly, this Court has both subject matter and *in personam* jurisdiction of this adversary proceeding.

### III. *Sovereign Immunity*

■ MESC insists that it is immune from this declaratory and injunctive suit under the Eleventh Amendment of the Constitution. MESC contends that since it has not waived its sovereign immunity by filing a proof of claim in these bankruptcy proceedings, Code § 106(c) is inapplicable, and MESC does not consent to this suit.

The seminal case in this area is *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In *Hoffman,* the Supreme Court, in construing § 106(c) of the Bankruptcy Code,[2] declared that "a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes ... but would not be subjected to monetary recovery." *Id.* 109 S.Ct. at 2823 (citations omitted). The Court averred that § 106(c)(2) is directed at declaratory and injunctive relief, rather than monetary recovery. *Id.* Explaining this point, the Court stated: "The clause [§ 106(c)(2)] echoes the wording of sections of the Code such as § 505, which provides that 'the court may determine the amount or legality of any tax,' 11 U.S.C. § 505(a)(1), a determination of an issue that obviously should bind the governmental unit but that does not require a monetary recovery from a State. We therefore construe § 106(c) as not authorizing monetary recovery from the States." *Id.* Thus, while the Eleventh Amendment precludes a debtor's affirmative monetary recovery against a state agency that has not filed a proof of claim, it does not prevent a bankruptcy court

from discharging a debt owed to a state agency, even in the absence of the state agency having filed a proof of claim.

### IV. *Bankruptcy Code § 108*

■ In a peripheral argument, MESC relies on Code § 108 as precluding this Court from adjudicating this adversary proceeding. MESC asserts that under Michigan law the time periods for administrative review of MESC's reassessments have expired, and the extensions of time permitted under § 108 have as well. However, MESC has misplaced its reliance; neither Michigan law, nor § 108 have any bearing on this proceeding. The Debtor is not seeking in this proceeding to challenge the amount of the reassessments, but rather seeks a declaration that any preconfirmation debt purportedly owed to MESC was discharged by the Confirmation Order. Accordingly, MESC's § 108 argument fails because the section is not applicable.

### V. *Notice*

MESC's principal argument declares that it was entitled to written notice of the filing of the petition in bankruptcy, and that since it did not receive such notice, its tax claims cannot be forever barred by the Confirmation Order's discharge of debts not provided for in the plan. MESC believes this to be so, even though Alberts was not aware that it owed any additional taxes to MESC. In sum, MESC asserts that all state taxing authorities are entitled to notice of a chapter 11 case, as a matter of course, regardless of whether the taxing authority has a claim against the debtor. MESC cites to the Bankruptcy Code, Bankruptcy Rules and legislative history as support of this alleged mandate.

■ Section 342 of the Code provides that "[t]here shall be given such notice as is appropriate ... of an order for relief in a

---

**2.** Section 106(c) provides:
Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C. § 106(c).

case under this title." 11 U.S.C. § 342(a). The section does not state to whom notice is to be given, and on its face, appears to leave that determination to the discretion of the court. However, the legislative history of the section, which is provided in the House and Senate Reports, states: "The Rules will prescribe to whom the notice should be sent, and in what manner notice will be given." H.R.Rep. No. 95–595, 95th Cong, 1st Sess 331–32 (1977) and S.Rep. No. 95–989, 95th Cong, 2d Sess 42 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5828, 6287–88. The legislative history also states that "due process will certainly require notice to all creditors and equity security holders." *Id.* Further, it indicates that "State and Federal governmental representatives responsible for collecting taxes *will* also receive notice." *Id.* (emphasis added). Some commentators have phrased this same statement with "should," and not "will." *See 2 Collier on Bankr.* ¶ 342.01 (15th Ed.1989). Nevertheless, other commentators have noted that it was clearly Congress' intent to leave it to the Rules, and the local rules derived therefrom, to indicate what entities should get notice by mail as a matter of course. *See* A. Herzog & L. King, *Collier Pamphlet Edition: Bankruptcy Code* § 342 comment, at 125 (1990) ("The Committee Reports refer to earlier versions of section 342. As enacted, the section is substantially revised. All matters pertaining to notice are left to the rules."). This examination of the legislative history § 342(a) demonstrates three points; one, Congress believed that creditors (presumably, *known* creditors) and equity security holders were required to be served in order to satisfy due process; two, Congress intended that the Bankruptcy Rules would elucidate the ambiguity of this Bankruptcy Code section; and, three, Congress thought that State ·and Federal taxing authorities should be served, but more importantly, did *not* mandate it. If Congress' intent was that all State and Federal taxing authorities be served, such intent would have been manifested in the language of the statute.

Various provisions of Bankruptcy Rule 2002 implement § 342(a) of the Code. The only provision which discusses taxing authorities is in Rule 2002(j), "Notices to the United States." However, the section refers only to federal taxing authorities. In fact, an advisory committee note to the rule, which is found in *Collier,* states: "This rule is not intended to preclude a local rule from requiring a state or local tax authority to receive some or all of the notices to creditors under these rules." 1 *Collier on Bankr.* 1299 (15th Ed.1987) (advisory committee note discussing Rule 2002(j)). This comment makes it clear that service upon state or local tax authorities, as a matter of course, is not mandated, but is left to local bankruptcy rules. The Local Bankruptcy Rules for the Southern District of New York do not contain such a requirement. *See* S.D.N.Y. Local Bankr.R. 45(c) (1986) ("In addition to the requirements of Rule 2002, and unless otherwise ordered by the court, notice shall be given to any entity who has or claims an interest in the subject matter of the proposed action or order or who otherwise would be affected by such action or order.").

The case of *In re CRC Wireline, Inc.,* 103 B.R. 804 (Bankr.N.D.Tex.1989), is apposite here. In *CRC,* the Texas State Comptroller filed a proof of claim for sales-use tax three days after the bar date set by the court. At the time the debtor filed its bankruptcy petition, it had pending before the Comptroller a petition for redetermination of the taxes; the Comptroller was listed as a creditor in the petition, but was not placed on the matrix for service. Notice of the bar date was, however, published in various newspapers. The Comptroller argued that its claim should be allowed even though it was not timely filed, because it had not received mail notice of the bankruptcy or bar date. The trustee claimed that the Comptroller was not entitled to mail notice, that the Comptroller should have made inquiry because it had actual notice of the bankruptcy, and that due process was satisfied by the Notice by Publication.

In holding that the Comptroller's proof of claim would be considered timely filed, the court did so only after concluding that

the Comptroller was at least a "probable" creditor. The court emphasized that the debtor and the Comptroller were in the midst of proceedings to redetermine the tax liability when the petition was filed. On these facts, the court concluded that the Comptroller was a "known" creditor, and, therefore, entitled to actual notice other than by publication. *Id.* at 807.

In short, if tax authorities were entitled to notice as a matter of course, the *CRC* court would not have had to engage in an analysis of whether the Comptroller was a "known" or "unknown" creditor. Instead, it would have merely held that a debtor is always obligated to provide notice to each state tax authority with which it deals.

■ MESC was not a known creditor of Alberts. There was no reason for Alberts to believe it owed MESC any taxes; it paid unemployment insurance taxes when due pursuant to the tax rates provided by MESC. The mere fact that the tax rate assigned to Alberts was considered a temporary rate, which could be adjusted, does not make MESC a known creditor. At the time of filing its petition in bankruptcy in December 1987, Alberts was current on its taxes due MESC, and was not aware of any redetermination of previously paid taxes. Therefore, MESC was not listed as a creditor.

■ Other courts have held that only "known" creditors are entitled to personal notice, by mail, of bar date orders. *In re Chicago, M., St. P. & P.R. Co.*, 112 B.R. 920, 923–24 (N.D.Ill.1990) (Debtor's knowledge of injury arising out of automobile accident in which passenger was seriously injured while riding in vehicle that veered off railroad trestle did not entitle adult passenger's parents to personal notice of bar date in railroad's bankruptcy, where railroad had no reason to believe parents would be pursuing derivative claim for loss of consortium, even though debtor was aware of accident.). Where a debtor has no knowledge of a claim and in good faith files its petition with as thorough a schedule of debts as possible, the debtor has done all that is required under the Code. *In re Flanigan's Enterprises, Inc.*, 77 B.R.

963, 965 (Bankr.S.D.Fla.1987) (citing *In re Siouxland Beef Processing Company*, 55 B.R. 95, 100 (Bankr.N.D.Iowa 1985)). In *Flanigan's*, the court was faced with an issue of whether the debtor was aware of an insurer's claim at the time it filed its chapter 11 petition; if so, the insurer was entitled to formal notice. Although the court accepted that the debtor was aware of the "possibility of a claim" being asserted by the insurer, the court determined that the insurer was delinquent in failing to timely notify the debtor of any amounts due under a terminated insurance contract which permitted retrospective premium adjustment. Consequently, the court believed that the debtor filed its schedules with as thorough a listing of debts as possible and did not knowingly fail to list the insurer as a creditor. *Id.*

*Flanigan's* is strikingly similar to the case, *sub judice*. MESC was not a known creditor at the time of filing, and at most, was merely an unknown, potential creditor because of its right to redetermine taxes, after the fact, under Michigan law. As in *Flanigan's*, the Debtor, here, filed as reasonably thorough a list of creditors as possible. There is no evidence that the Debtor knowingly failed to list MESC as a creditor; Brooks acquired Alberts in 1984, and never received a Notice of Assessment from MESC until 1989. If there was a history of MESC redetermining Alberts' taxes, whereby Alberts should have reasonably foreseen the assessment, the outcome here might very well be different.

In bankruptcy, the debtor is not under an affirmative duty to investigate every transaction it has with every entity it deals with to determine whether it owes that entity money. Further, it is important to remember that in this regard, a state tax claimant is not entitled to greater protections than other creditors. *See e.g., Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Accordingly, since MESC was not a known creditor at the time the Debtor filed its petition or within a reasonable time thereafter, MESC was not entitled to formal notice of the petition or bar date.

Recently, the District Court for the Middle District of Florida in *Charter Crude Oil Co. v. Petroleos Mexicanos*, No. 89–49–Civ–J–16, slip op. (M.D.Fla. Jan. 10, 1991) discussed the different notice requirements for known and unknown creditors under the Code and with a view to due process concerns. In *Charter*, the Bankruptcy Court rejected the debtor's contention that Pemex, a party to a pre-petition contract for the sale of oil to debtor, had abandoned its claim, and was therefore, an unknown creditor not entitled to formal notice of the bar date. In reversing the Bankruptcy Court, the District Court expressly held that unknown creditors are entitled only to publication notice of a debtor's bar date. *Slip Op.* at 5–6. The District Court also held that, although the debtor must provide known creditors with formal notice of the bar date, "it is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Id.* at 7. The District Court explained, "Even assuming that Charter knew there was a possibility of a claim by Pemex, Charter was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims." *Id.* at 8. The District Court determined that publication notice was satisfactory for unknown creditors, and then, remanded the case back to the Bankruptcy Court to determine whether Pemex was a known or unknown creditor.

The Supreme Court has held that publication notice for creditors who are not reasonably ascertainable satisfies due process concerns. *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). The same Court averred that not everyone who may conceivably have a claim is properly considered a creditor entitled to formal notice. *Id.* Further, the Fourth Circuit has held:

> In bankruptcy, the court has an obligation not only to the potential claimants, but also to existing claimants and the petitioner's stockholders. The Court must balance the needs of notification of potential claimants with the interests of existing creditors and claimants. A

bankrupt estate's resources are always limited and the bankruptcy court must use discretion in balancing these interests when deciding how much to spend on notification.

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co. (In re A.H. Robins Co.)*, 820 F.2d 1359, 1364 (4th Cir.1987).

■ In the case at bar, the Debtors provided mail notice of the bar date to approximately 4,000 creditors, and caused the Notice to be published in the national edition of *The New York Times*, the national edition of *The Wall Street Journal*, and in a trade magazine. The Debtors clearly have satisfied the notice requirements of the Bankruptcy Law and constitutional due process considerations.

## VI. *Confirmation Order*

■ Under § 1141 of the Code, the confirmation of a chapter 11 plan of reorganization discharges the debtor from any debt that arose prior to confirmation, unless the debt is specifically excepted under the Code, plan, or order confirming the plan. *See* 11 U.S.C. § 1141. Nevertheless, MESC cites several cases for the proposition that § 1141(d)(1)(A) is unconstitutional. *See In re General Oil Distributors, Inc.*, 68 B.R. 603 (Bankr.E.D.N.Y.1986); *Broomall Industries, Inc. v. Data Design Logic Systems, Inc.*, 786 F.2d 401 (Fed.Cir.1986); *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir. 1974).

However, these cases did not hold that § 1141(d)(1)(A) is unconstitutional *per se*, but that its application in certain circumstances could be unconstitutional. A cursory review of these cases demonstrates that the courts were concerned with the deprivation of due process of creditors who are without sufficient notice of the bankruptcy case to file a claim. Further review of the cases reveals that the alleged creditor was "known" or clearly should have been known under the circumstances. That is different from the facts of the case at bar.

The confirmation of a plan binds all creditors "whether or not the creditor is im-

paired and whether or not the creditor files a claim. 11 U.S.C. § 1141(a)." *Ravenna Industries., Inc. v. Ohio Bureau of Workers' Compensation (In re A.C. Williams)*, 51 B.R. 496, 501 (Bankr.N.D.Ohio 1985) (quoting *In re American Properties, Inc.*, 30 B.R. 239, 246 (Bankr.D.Kan.1983)). Following confirmation, except as provided in the plan, the confirmation order or §§ 1141(d)(2) or 1141(d)(3), the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders and general partners in the debtor. Code § 1141(c); *see also General Electric Credit Corp. v. Nardulli & Sons, Inc. (In re Nardulli & Sons, Inc.)*, 836 F.2d 184 (3d Cir.1988).

### CONCLUSION

In light of the foregoing, MESC's motion to dismiss for lack of jurisdiction is denied and the Debtor's motion for summary judgment is granted. Accordingly, since MESC was not a known creditor and did not file either a pre-petition or post-petition claim, nor did MESC move for leave to file a late proof of claim, any claim for redetermined pre-petition or pre-confirmation taxes was discharged by § 1141 and the Confirmation Order itself. However, post-confirmation taxes (those taxes which *accrued* post-confirmation) are not discharged.

Attorneys for Debtor to settle Order on 5 days notice.