In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, Debtors.

Phyllis Jaskey JONES, et al., Plaintiffs,

v.

CHEMETRON CORPORATION, Defendant.

Bankruptcy No. 88–00448 JLC.
Adv. No. 92–2418.
Motion No. WM–02.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 26, 1993.

See also, 158 B.R. 332, 158 B.R. 343, 158 B.R. 361.

William Mitchell, Cleveland, OH, for plaintiffs.

Thomas L. Anastos, Baker & Hostetler, Cleveland, OH, for McGean–Rohco, Inc.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, PA, for debtors.

Dennis J. Lewis, Cohen & Grigsby, Pittsburgh, PA, Thomas G. Hermann, Laura K. Hong, Dennis G. Terez, Squire, Sanders & Dempsey, Cleveland, OH, for Chemetron.

Cynthia Baker, Fried, Frank, Harris, Shriver & Jacobson, New York City, Michael Lederman, Sunbeam/Oster Co., Inc., Providence, RI, for Sunbeam/Oster.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The three matters before this court are: 1) a motion to allow a late claim filed by Phyllis Jaskey Jones, et al. ("Plaintiffs"), against Allegheny International, Inc., et al., ("AI"); 2) an adversary complaint filed by the Plaintiffs requesting the court declare their claims against AI were not discharged; and 3) a counterclaim filed by Chemetron Corporation ("Chemetron") against the Plaintiffs requesting, among other things, this court enjoin the Plaintiffs from pursuing their claims in state or federal court.

After careful consideration of the record, it is determined that the motion is granted and the adversary proceeding and counterclaim are dismissed without prejudice. In addition, the Plaintiffs are granted relief from the automatic stay sua sponte so that they can pursue to liquidation their action against AI pending in the Court of Common Pleas for Cuyahoga County, Ohio.

## I. FACTS

From October 1965 through 1972, Chemetron manufactured an antimony oxide catalyst at their Harvard Avenue facility in Cuyahoga Heights, Ohio. This process involved the creation of toxic waste which was dumped at the McGean Chemical Company landfill located on Bert Avenue in Newburgh Heights, Ohio ("Bert Avenue Dump").

Plaintiffs were residents of, or visitors to, the residential neighborhood surrounding the Bert Avenue Dump. Plaintiffs allege that they have been physically injured from repeated exposure to toxic substances deposited by Chemetron at the Bert Avenue Dump. The Plaintiffs now seek compensation for their injuries from Chemetron.

AI and Chemetron filed a petition to reorganize under Chapter 11 of the Bankruptcy Code on February 20, 1988. The court ordered the claims Bar Date to be May 31, 1988. As required by that court order, Chemetron and AI provided notice of the May 31, 1988, Bar Date to all of their known creditors. Notice of the Bar Date was also published in the national editions of the *New York Times* and the *Wall Street Journal.* The Plaintiffs in this case were not listed as creditors on the Debtors' schedules and were not personally served with notice of the bankruptcy proceedings or of the claims Bar Date. On July 12, 1990 this court confirmed AI's proposed Plan of Reorganization.

In July of 1992, the Plaintiffs sued defendants McGean–Rohco, Inc., McGean Chemical Company, Inc., and Chemetron in the Court of Common Pleas for Cuyahoga County, Ohio in a case entitled *Jaskey Jones, et al. v. McGean–Rohco, Inc., etc., et al.,* Case No. 227973. The Plaintiffs have since filed two pleadings in this court: a motion to file a late claim and an adversary complaint requesting the court determine their claims were not discharged.

## II. DISCUSSION

The Plaintiffs argue that they were known claimants at the time of the bankruptcy was filed and therefore, they should have received actual notice of the bankruptcy proceedings and the claims Bar

Date. Because actual notice was not received, the Plaintiffs maintain that their claims were not discharged and they are entitled to file a late claim.

Chemetron asserts that the Plaintiffs were not known creditors and hence were not entitled to actual notice of the claims Bar Date or the bankruptcy proceedings. Moreover, Chemetron believes that the Plaintiffs are not entitled to file a late claim and that the Plaintiffs' claims against it have been discharged.

### A. Motion to File Late Claims

#### 1. "Known" vs. "Unknown" Claimants

█ The primary issue in this case is whether the Plaintiffs were known or unknown claimants. As a general rule, a known creditor's claim cannot be discharged in bankruptcy if that creditor did not receive actual notice of the relevant bankruptcy proceedings.[1]

Because the words "known" and "unknown" tend to be labels of conclusion rather than analytical guidelines, it is important to precisely define what criteria are used to distinguish between "known" and "unknown" creditors. The criteria are particularly crucial in this case where Chemetron's actions may possibly create a tort claim against AI. Furthermore, when considering a standard or criteria for determining "known" and "unknown", the court must address the question of how probable must a potential suit against the debtor be before an "unknown" claimant manifests into either a "known" claimant or a known class of claimants. The Court of Appeals for the Third Circuit has not addressed this question, therefore the court must look to other districts and circuits for guidance.

This court adopts the view suggested by the Bankruptcy Court for the Southern District of New York in its treatment of *In re Brooks Fashion Stores, Inc.* 124 B.R. 436 (Bankr.S.D.N.Y.1991). In that case,

the debtors brought an adversary complaint against the Michigan Employment Security Commission (MESC) seeking declaratory and injunctive relief with respect to an unemployment tax delinquency claim asserted post-confirmation by the MESC. The court decided that MESC was not a known creditor of the debtor. However, the court noted that "[i]f there was a history of MESC redetermining Alberts' taxes, whereby Alberts should have reasonably foreseen[2] the assessment, the outcome here might very well be different." *Id.* at 444. [emphasis added].

This standard imposes on a company the responsibility of knowing whether it is reasonably foreseeable that a party may bring a lawsuit. Because the consequences of a company's actions may create or eliminate a lawsuit against the company, the court interprets *In re Brooks* to impose a reasonable affirmative duty on a debtor company to keep abreast of any obvious and potentially detrimental consequences its actions may have. This standard requires debtor companies to remain knowledgeable of the plain effects their hazardous activities might have on other parties and thus, discourages willful disregard of one's injurious acts in keeping with public policy.

█ Accordingly, this court adopts the following standard: if at the time of filing it is reasonably foreseeable to a debtor, who is or should be aware of the potential consequences of its actions, that a party that is foreseeable will most likely file a claim against the debtor, that party is a "known" creditor of the debtor. Furthermore, the fact that a debtor does not know the name and address of a creditor does not prevent that creditor from being "known."

In adopting this standard, reasonableness is the rule. This standard does not require a debtor company to spend a lot of time trying to predict the future rather than running a business. The burden imposed upon a debtor company is only to

1. *In re Unioil,* 948 F.2d 678 (10th Cir.1991); *In re Remington Rand Corp.,* 836 F.2d 825 (3rd Cir.1988); *Reliable Electric Co., Inc. v. Olson Construction Company,* 726 F.2d 620 (10th Cir. 1984).

2. Foresight is defined as "heedful thought for the future; reasonable anticipation of result of certain acts or omissions." Black's Law Dictionary 649 (6th ed. 1990).

know the likely and obvious consequences of its actions.

### 2. Chemetron's "Foreseeability"

■ Reasonable foreseeability does not create a strict liability result. A negligible amount of pollution will not permit a late claim to be filed after the Bar Date. The question is not whether Chemetron polluted the site. Chemetron admits that it did. The question is whether Chemetron could have reasonably foreseen that it would incur legal liability because of its pollution. Considering the magnitude of the pollution and the specific and relevant circumstances of the case, it was reasonable to foresee this type of claim.

Chemetron knew or should have known that it was reasonably foreseeable that it could suffer claims from individuals living near the Bert Avenue Dump. As Chemetron itself stated:

> The early 1980's stand out as a point beyond which *no reasonable person should have failed to suspect a potential connection* [between the Bert Avenue Dump and local health problems] because of the blizzard of media and individual attention focused upon the alleged injuries supposedly caused by exposure to hazardous substances from the Bert Avenue site. In 1980, for example, the Nuclear Regulatory Commission (NRC) investigated the site and issued a public report stating that radioactive contamination at the site was great enough to warrant a remediation effort. [emphasis supplied]

Chemetron's Preliminary Statement at 8.

In addition, there is sworn evidence that the dump site was unfenced for a pertinent period of time. Further, that site actually contained swings on which the local children played and was used as a park. (Looby Depo. of November 6, 1991 at 15)

This court holds that at the time AI filed for Chapter 11 protection in 1988, it was reasonably foreseeable that Chemetron would suffer claims from the residents surrounding the Bert Avenue Dump. Consequently, this court concludes that the Plaintiffs were known creditors.

### 3. Actual Notice

The form of actual notice required under Due Process is dependent on the facts of each case.

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated, under all the circumstances,* to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [emphasis added]

*Mullane v. Central Hanover Trust Company,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ Notice by publication in the national editions of the *New York Times* and the *Wall Street Journal,* was not "reasonably calculated" to give notice to these Plaintiffs. The fact that such national newspaper notice was the only notice required by a court order is not material. The court was not apprised of Chemetron's fact situation when the court issued its order. It is the debtor's duty to propose the actual notice. Further, notice by publication was intended to alert "unknown" claimants, not "known" claimants such as the Plaintiffs.

In the interest of clarifying what is expected of debtors, the court suggests as an example that one form of notice that would have been reasonably calculated under these circumstances would have been for Chemetron to place advertisements in a local newspaper that circulates among the potential claimants. Chemetron could have also engaged in a mailing to the houses surrounding the Bert Avenue Dump or post notices in the neighborhood surrounding the dump. This list is intended to be suggestive, not exhaustive.

The court does not demand useless Herculean efforts on the part of debtors to notify a reasonably foreseeable claimant known only by the site of an event and not by name. However, Chemetron knew the specific location of the toxic event and because of the possible mechanism of injury, it was reasonable to expect the Plaintiffs to be located in the neighborhood surrounding the Bert Avenue Dump. Chemetron

should have used that knowledge to formulate a strategy to create a notice reasonably calculated to apprise those potential claimants of the bankruptcy proceedings.[3]

Chemetron contends that because the last of the Plaintiffs to reside near the Bert Avenue Dump left the area in 1985, local notification as the court suggests would not have been effective. Although this is also true, this argument is unpersuasive. Actual notice is designed to in good faith satisfy Due Process considerations even though the notice may not be successful and reach the intended recipient in some instances.

> The Supreme Court has thus established a balancing procedure in which costs and efficiency considerations are balanced against the probability that a procedure will effectuate notice.
>
> What is needed in bankruptcy proceedings is a form of notice which is likely to achieve actual notice in a large volume of cases but is not overly expensive or time consuming.

*Matter of Park Nursing Center, Inc.,* 766 F.2d 261, 263 (6th Cir.1985) (discussing *Mullane v. Central Hanover Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Actual notice is not presumed to be impossible when a debtor does not know a creditor's name and address. Of course, having a name and address makes actual notice easier, however, the test is whether the debtor's attempted notice was reasonably calculated to provide notice, not whether the notice was actually received.

Locale specific notice need not be flawless. Locale specific notice is one method that is reasonably calculated to reach reasonably foreseeable claimants in similar fact situations without imposing an undue

expense or burden on the debtor. The possibility is not foreclosed that there are other methods of notice that would satisfy the *Mullane* due process requirements for this fact situation.

In light of the above, Chemetron's contention that locale specific notice would not have been effective because all of the Plaintiffs had moved away from the Bert Avenue area is not controlling. The important conclusion is that Chemetron did not undertake *any* notice that was reasonably calculated to notify these unique Plaintiffs of the bankruptcy proceedings and the claims Bar Date, even though their potential injuries were foreseeable.

### 4. May the Plaintiffs File a Late Claim

Having determined already that the Plaintiffs were known creditors and that Chemetron did not to give the Plaintiffs actual notice, the issue of whether the Plaintiffs are entitled to file a late proof of claim. The court in *In re Remington Rand Corporation,* 836 F.2d 825 (3rd Cir. 1988) considered the totality of the circumstances when it had to decide whether a creditor had acted promptly and diligently in filing a late proof of claim.

> Remington acknowledges that it failed to provide the government, a known creditor, with proper [actual] notice of the Bar Date for claims under the plan. Accordingly, the government was entitled to request permission to file a late proof of claim [citations omitted]. Upon receipt of such a request, however, the bankruptcy court must examine the totality of the circumstances before allowing a late filing.

*In re Remington Rand Corporation,* 836 F.2d at 833.

The issue presented now is whether the totality of the circumstances favors

---

**3.** The court cautions against extending its holding which defines when local notice is required.

"In the Mullane case ... the Court thoroughly canvassed the problem of sufficiency of notice under the Due Process Clause, pointing out the reasons behind the basic constitutional rule, as well as the practical consideration which make it impossible to draw a standard set of specifications as to what is constitutionally adequate

notice, to be mechanically applied in every situation." *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (summarizing *Mullane v. Central Hanover Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The case at bar, while not unique, is somewhat atypical in its facts and as a result, this court's holding is fact specific.

allowing the Plaintiffs to file a late proof of claim. This court's understanding of *In re Remington Rand* is that acting promptly and diligently is but one factor when a court is considering the totality of the circumstances. The court finds that the Plaintiffs, while not acting very promptly or diligently, were not so sluggish as to outweigh the fact that Chemetron did not provide reasonably calculated notice to alert the Plaintiffs of the bankruptcy proceedings and the claims Bar Date. Therefore, the totality of the circumstances dictate that the Plaintiffs are entitled to file a late claim.

**B.** *Adversary Complaint and Counterclaim*

The amount of the Plaintiffs' claims, if any, against Chemetron has not been determined. Consequently, the court will not address the issue of whether the claim is or is not discharged because the court has permitted a late claim to be filed. Therefore, the Plaintiffs' adversary complaint and Chemetron's counterclaim are dismissed without prejudice.

**III. CONCLUSION**

The Plaintiffs' motion to file a late claim is granted. This court expresses no opinion or judgment on the validity of Plaintiffs' claim that the Bert Avenue Dump caused or aggravated Plaintiffs' alleged injuries. In addition, the Plaintiffs' adversary complaint to declare that Plaintiffs' claims are not discharged and Chemetron's counterclaim are dismissed without prejudice.

Finally, the court grants the Plaintiffs relief from the automatic stay sua sponte. 11 U.S.C. § 362. The Plaintiffs may pursue their Cuyahoga County, Ohio action entitled *Jaskey Jones, et al. v. McGean–Rohco, Inc., etc., et al.*, Case No. 227973 to liquidation, but not collection, against the Chemetron.