In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc. and Chemetron Corporation, Debtors.

**CHEMETRON CORPORATION,**
Appellant,

v.

**Phyllis Jaskey JONES, et al., Appellees.**

Civ. A. No. 93–1582.
Bankruptcy No. 88–448.

United States District Court,
W.D. Pennsylvania.

June 14, 1994.

M. Bruce McCullough, George L. Cass, Buchanan Ingersoll, Pittsburgh, PA, Thomas G. Hermann, Laura K. Hong, Dennis G. Terez, Michael B. Axler, Squire, Sanders & Dempsey, Cleveland, OH, and David R. Sargent, Sunbeam–Oster Co., Inc., Tampa, FL, for appellant Chemetron Corp.

William K. Mitchell (argued), Deborah J. Papushak, Armstrong, Mitchell & Damiani, Cleveland, OH, for appellees Phyllis Jaskey Jones, Pamela Jo Swansinger, Sandra Jaskey Hujarski, Patricia Hujarski, Teresa Hujarski Ross, Janice Jaskey Butvin, Frank Butvin, Robert Butvin, Brian Butvin, Susan Butvin, Walter Anielski, Arlene Vans, Yvonne Vans Bekoscke, Anthony Vans, Gregory Vans, Carol Schultz, Mary Shaffer, Brittany Cull and Stephanie Schaffer.

Randall Solomon, Thomas L. Anastos, Baker & Hostetler, Cleveland, OH, Cynthia Baker, Fried, Frank, Harris, Shriver & Jacobson, New York City, and Dennis J. Lewis, Cohen & Grigsby, P.C., Pittsburgh, PA, represented parties to the original bankruptcy action.

### MEMORANDUM AND ORDER

McCUNE, Senior District Judge.

We consider the appeal of appellant Chemetron Corporation of the Bankruptcy Court's Memorandum Opinion and Final Order ("Order") entered August 2, 1993 in the underlying Chapter 11 reorganization proceeding and Adversary Proceeding No. 92–2418. By the Order appellee Phyllis Jaskey Jones and eighteen other appellees were permitted to file late claims against Chemetron. Appellees' late claims arise from their allegations against Chemetron and two other defendants (not parties to this appeal) for personal injuries allegedly caused by exposure to radioactive and toxic contamination at two industrial sites, one in Newburgh Heights and one in Cuyahoga Heights, Ohio.

This appeal is pursuant to Bankruptcy Rule 8001(a). Our jurisdiction is pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

### PROCEDURAL HISTORY

Allegheny International, Chemetron and other debtors (collectively "Debtors") filed a petition to reorganize under Chapter 11 of the Bankruptcy Code on February 20, 1988. The Bankruptcy Court ordered the claims bar date to be May 31, 1988. As required by that order, notice of the bar date was provided to creditors listed on Debtors' schedules of liabilities and certain holders of securities. Debtors were ordered to publish the same notice in the national editions of the *New York Times* and *Wall Street Journal*.[1] Appellees were not listed on the Debtors' schedules and were not personally served with notice of the bar date or the bankruptcy proceedings. On July 12, 1990, the Bankruptcy Court confirmed the Debtors' proposed Plan of Reorganization.

On March 2, 1992, Appellees sued Chemetron and two other companies, McGean–Rohco, Inc. and McGean Chemical Company, Inc., in the Court of Common Pleas in Cleveland, Ohio for injuries they allegedly sustained as the result of exposure to hazardous

1. The Debtors voluntarily published notice in seven other newspapers in areas the Debtors had ongoing business at the time of filing. According to Chemetron, notice was not published in any Cleveland area newspaper because Chemetron sold the manufacturing facility at Harvard Avenue and the Bert Avenue Site in 1975 and was not engaged in manufacturing activities in that area at the time it filed for Chapter 11 protection.

and radioactive material deposited at the Bert Avenue Site in Newburgh Heights, Ohio by Chemetron. In response to the complaint, Chemetron moved to dismiss the claims as to Chemetron in light of the confirmation of the Plan of Reorganization. Appellees then filed a motion with the Bankruptcy Court seeking permission to file late claims and a separate motion to declare that their claims were not discharged. Chemetron answered the adversary proceeding and counterclaimed, seeking a declaratory judgment against Appellees that their claims against Chemetron were discharged as a result of the reorganization.

On August 2, 1993, the Bankruptcy Court granted Appellees' motion for permission to file late claims against Chemetron and *sua sponte* permitted appellees to proceed with their litigation against Chemetron in the Ohio lawsuit. The adversary proceeding and Chemetron's counterclaim were dismissed without prejudice. The Bankruptcy Court reserved ruling on the issue whether Appellees' claims are discharged in light of the permission to file the late claims. This appeal followed.

The Bankruptcy Court held that Appellees were known creditors of Chemetron in February 1988 when Chemetron filed for Chapter 11 reorganization. As known creditors, the Bankruptcy Court held that Chemetron was required to serve on them actual notice of the bar date, not notice by publication. Lastly, the Bankruptcy Court concluded that the totality of the circumstances weighed in favor of allowing Appellees to file late claims.

FACTUAL BACKGROUND

Appellees' Amended Complaint states that in 1965 McGean Chemical Company sold to Chemetron its stock in a manufacturing facility on Harvard Avenue located in Cuyahoga Heights, Ohio, and the Bert Avenue Site, located approximately ½ mile from the manufacturing facility. Chemetron owned and operated the Harvard Avenue plant and the Bert Avenue Site from 1965 until 1975 when

Chemetron sold both sites to McGean. Subsequently, McGean merged with Rohco, Inc. to become McGean–Rohco, the current owner of the sites at issue. During its period of ownership, Chemetron manufactured an antimony oxide catalyst at the Harvard Avenue facility. The process required the use of depleted uranium. In 1974 Chemetron dismantled its catalyst production equipment. In 1975 Chemetron disposed of radioactive material from the Harvard Avenue facility at its Bert Avenue Site. In 1980 the Nuclear Regulatory Commission informed Chemetron that decontamination of the Bert Avenue Site was required.

Appellees are former residents of Newburgh Heights and Cuyahoga Heights who allegedly visited or lived in the vicinity of the Bert Avenue Site from as early as the 1930s to 1985.[2] Appellees allege that the operation and use of the Harvard Avenue plant and Bert Avenue Site by Chemetron, McGean Chemical Company and McGean–Rohco caused Appellees to be exposed to radioactive and hazardous substances. The exposure allegedly caused a variety of medical problems and increased their risk of future medical problems and cancer. Appellees contend that they first became aware that the alleged exposure to the substances caused their medical problems in either October 1991 or March 1992.

The parties have filed briefs. We heard oral argument on February 25, 1994.

DISCUSSION

We review the Bankruptcy Court's findings of fact under the clearly erroneous standard. Fed.R.Bankr.P. 8013. Conclusions of law are subject to de novo review. *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992). However, where there are mixed questions of law and fact, we undertake " '[de novo] review of the trial court's choice and interpretation of legal pre-

---

**2.** Appellees allegedly frequently visited or lived in two homes located in Newburgh Heights. According to the Amended Complaint, the residence located at 3969 E. 29th Street was sold in 1981 with one Appellee continuing to reside in the house as a tenant until 1985. Appellees associated with that home allegedly visited either weekly or several times a week until 1985. The other house, located at 1989 East 29th Street, was sold in 1965.

cepts and its application of those precepts to historical facts.'" *Id. quoting Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981); *see also, Kilbarr Corp. v. General Services Administration, (In re Remington Rand Corp.)*, 836 F.2d 825, 828 (3d Cir.1988). Since the issues here are mixed questions of law and fact, we shall review this appeal de novo.

■■■ Under Bankruptcy Rule 3003(c)(3) the Bankruptcy Court is required to set a bar date for filing proofs of claim. The bar date is strictly construed to further the objective of finality in bankruptcy proceedings. *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 654 (M.D.Fla.1991). Confirmation of the debtor's Plan of Reorganization discharges the debtor from claims which arose prior to the confirmation date. *Id.;* 11 U.S.C. § 1141.

■■■ Due process requires that actual written notice of a debtor's bankruptcy filing and bar date be provided to known creditors. *New York v. New York, N.H. & H. R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). Where the names, addresses and interests of potential parties are unknown, notification by publication satisfies the requirements of due process. *Id.* A "known" creditor is one whose identification as such is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347–48, 99 L.Ed.2d 565 (1988). An "unknown" creditor is one whose identification is not "reasonably ascertainable" and whose claim is merely "conceivable, conjectural or speculative." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 658–59, 94 L.Ed. 865 (1950). The principal argument raised by Chemetron in this appeal is that the standard applied by the Bankruptcy Court that Appellees' claims were reasonably foreseeable making Appellees known creditors conflicts with governing bankruptcy law.

The standard adopted by the Bankruptcy Court was: "if at the time of filing it is reasonably foreseeable to a debtor who is or should be aware of the potential consequences of its actions, that a party that is foreseeable will most likely file a claim against the debtor, that party is, a 'known' creditor of the debtor." Order at 5–6. The Bankruptcy Court also held that a creditor can be "known" even though the debtor does not know the creditor's name and address. *Id.* at 6. The Bankruptcy Court stated that the aforementioned standard was suggested by the Bankruptcy Court for the Southern District of New York in *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436 (Bankr. S.D.N.Y.1991).

In *Brooks,* the debtor had no knowledge of the claim of the Michigan Employment Security Commission ("MESC"). Notice of the bar date for filing proofs of claim was published in two national newspapers and a trade paper. A proposed plan of reorganization was confirmed with an order containing a permanent injunction against claims which arose prior to the order's entry. MESC argued unsuccessfully that it was not barred by the order confirming the plan because it did not receive written notice of the filing of the petition. The court stated that "[w]here a debtor has no knowledge of a claim and in good faith files its petition with as thorough a schedule as possible, the debtor has done all that is required under the Code." *Id.* at 444. The court noted that had there been a "history of MESC redetermining [the debtor's] taxes, whereby [the debtor] should have reasonably foreseen the assessment, the outcome here might very well be different." *Id.* at 444. It is from this language that the Bankruptcy Court derived a "reasonable affirmative duty on a debtor company to keep abreast of any obvious and potentially detrimental consequences its actions may have." Order at 5.

We respectfully disagree with the Bankruptcy Court's interpretation of *Brooks.* The dicta in *Brooks* indicated that had MESC redetermined the debtor's taxes in prior years, it would be reasonable for the debtor to foresee that MESC might again exercise its right. Here, the Bankruptcy Court eliminated the past dealings of a creditor with a debtor from its reasonably foreseeable test. The decisions cited by the court in *Brooks* also demonstrate that past dealings between the creditor and debtor are essential in determining whether a creditor should have

been "known". *See In re Flanigan's Enterprises, Inc.*, 77 B.R. 963 (Bankr.S.D.Fla.1987) (Creditor did not knowingly fail to list insurer as creditor where insurance creditor waited almost three years to notify the debtor of amounts due under a terminated insurance contract.); *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 654 (M.D.Fla.1991) (Three years prior to filing for bankruptcy debtor allegedly breached its contract with creditor by emitting a reduced payment to creditor. That debtor knew there was possibility of a claim by creditor did not make the creditor "known.").

Elsewhere in the *Brooks* opinion the court reemphasized the importance of an historical relationship between the debtor and creditor as a condition precedent for a creditor to be one of debtor's "known" creditors. In addressing MESC's argument that the discharge provision of the Code, 11 U.S.C. § 1141, is unconstitutional, the court concluded that § 1141(d)(1)(A) is not unconstitutional *per se*, but that its application in certain circumstances could be unconstitutional. The facts in the cases cited indicated "that the alleged creditor was 'known' or clearly should have been known under the circumstances." *Id.* In all of the cases cited, there were past dealings between the creditors and debtors. Moreover, the circumstances in the cases cited by the court strongly suggest that a search of the debtors' records would have revealed the creditors' potential claims.[3]

 To comply with the requirements of due process, a debtor is not obligated to conduct an "impracticable and extended" search for all potential creditors. *Mullane*, 339 U.S. at 317–18, 70 S.Ct. at 658–59. The debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Charter Crude Oil Co., supra*, 125 B.R. at 655. Nor is the debtor "required

to give actual notice of the bar date to a creditor when the debtor could reasonably have believed that the creditor had abandoned its claims against debtor." *Id.* Even where a debtor knows there is a possibility of a claim by a creditor, if the creditor's claim is merely conceivable, conjectural or speculative, the debtor is not required to give actual notice to the debtor. *Id.* at 656. However, "if a debtor knows or should know of its potential liability to a specific creditor, that creditor is a known creditor entitled to actual notice." *In re Thomson McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991).

The Bankruptcy Court found that Appellees were known creditors in February 1988 because their claims were foreseeable at the time Chemetron filed for bankruptcy. However, as stated above, absent some course of dealing or some communication between a debtor and potential claimant indicating the viability of a claim, a creditor is not reasonably foreseeable. Appellees did not produce any evidence which suggests a course of dealing between Chemetron and Appellees or a similarly situated resident during the relevant time period. There is nothing in the record which contradicts the claim that Chemetron and Allegheny International were unaware of Appellees' claims until Appellees filed their Ohio lawsuit, more than 4 years after Chemetron filed for reorganization. It is uncontroverted that between 1980, when the NRC first informed Chemetron of unpermitted disposition of radioactive materials at the Bert Avenue Site, and February 1988, no one filed a claim or expressed an intention to file a claim against Chemetron.

Even if we were to apply the foreseeability test proposed by the Bankruptcy Court, the record does not support the claim that Appellees were foreseeable claimants in 1988. In 1980 the news of the contamination at the Bert Avenue Site was publicized in the local newspapers and on television. At meetings

---

**3.** The cases cited in *Brooks* regarding the constitutionality of § 1141 shared in common specific prepetition relationships between the debtor and creditor which strongly suggested that the debtor had knowledge of the creditor's potential claim against the debtor prior to filing the petition. *See, Broomall Industries, Inc. v. Data Design Logic Systems, Inc.*, 786 F.2d 401 (Fed.Cir.1986)

(Fact issue whether debtor on notice of creditor's patent infringement claim); *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir. 1984) (Debtor allegedly breached subcontract pre-petition); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir.1974) (Pre-petition contractual relationship).

concerned residents were told by NRC experts that the radiation was serious enough to require cleaning up eventually, but did not pose a safety or health risk. In 1981 the EPA reported that no ground water contamination had been found at the Site. In 1983 the EPA reiterated that the Bert Avenue Site presented no serious radiation hazard to the surrounding neighborhood. If Chemetron gave any thought to the subject, it was reasonable to assume that claims would not be filed because of the assurances of these agencies that the Bert Avenue Site posed no health risk to the neighborhood. There is no evidence that Chemetron was aware of any danger the Site presented to residents. In fact the danger did not exist according to the agencies involved. Nor is there anything in the record to support Appellees' contention that Chemetron knew that children played at the Site prior to 1980 when the Bert Avenue Site was fenced and posted with warning signs. In 1975, the Site belonged to McGean–Rohco. Thus, there was no reason for Chemetron to assume in 1988 that there would be claims from residents for ailments caused by exposure to the contamination from the Sites. At most, any future claim was speculative. We find that Appellees were not foreseeable claimants and, accordingly, were unknown creditors.

The Bankruptcy Court found Appellees were entitled to actual notice because, by application of its reasonable foreseeability test, they were "known" creditors. Known creditors are required to be given actual notice of the claims bar date. *New York, N.H. & H. R. Co., supra,* 344 U.S. 293, 73 S.Ct. 299. However, for unknown creditors such as Appellees whose claims are speculative and not foreseeable, it is well established that constructive notice of the bar date by publication satisfies due process. *Id.,* at 296, 73 S.Ct. at 301; *In re Thomson McKinnon Securities Inc.,* 130 B.R. at 720; *Charter International Oil Co. v. Ziegler (In re Charter),* 113 B.R. 725, 727–28 (M.D.Fla.1990). Here, publication of notice in the national editions of the *Wall Street Journal* and *New York Times* as well as in local newspapers where Debtors had ongoing business at the time of filing was sufficient under the circumstances to apprise unknown parties of the pendency of this action. *New York, N.H. & H. R. Co.,* 344 U.S. at 296, 73 S.Ct. at 301; *In re Brooks Fashion Stores, Inc.,* 124 B.R. at 445.

Except upon a showing of excusable neglect, a bankruptcy court may not accept a late filing of a creditor's claim. *In re Waterman Steamship Corp.,* 59 B.R. 724, 727 (Bankr.S.D.N.Y.1986). Although it is questionable whether excusable neglect remains a viable defense for filing a late proof of claim when the claimant is entitled to only publication notice, we shall err on the side of caution and apply the standard.[4] The determination of whether neglect is excusable

> "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*Pioneer Investment Serv. Co. v. Brunswick Assocs. Ltd. Partnership,* — U.S. —, —, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).

In the case at bar the Bankruptcy Court found that although Appellees, "while not acting very promptly or diligently, were not so sluggish as to outweigh the fact that Chemetron did not provide notice to alert the [Appellees] of the bankruptcy proceedings and the claims Bar Date." Order at 11. We disagree and find that the notice was adequate under the circumstances. We agree with the Bankruptcy Court that Appellees did not act promptly or diligently. Their motion to file a late claim occurred more than four years after the bar date, two years after the Plan of Reorganization had been con-

4. *See Trump Taj Mahal Associates v. O'Hara (In re Trump Taj Mahal Associates),* No. 93–3571, 1993 WL 534494 at *5–6 n. 7, 1993 U.S. Dist. LEXIS 17827 at *18 n. 7 (D.N.J. December 13, 1993); *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992); *In re Waterman Steamship,* 59 B.R. at 728.

firmed and twelve years after media and neighborhood attention first focused on the hazardous substances at the Bert Avenue Site. That Appellees were allegedly unaware of their claims does not constitute excusable neglect. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992); *In re Penn Central Transportation Co.,* 42 B.R. 657, 675 (E.D.Pa.1984), *aff'd,* 771 F.2d 762 (3d Cir.1985). To permit Appellees to file a late claim would prejudice Chemetron by denying a "fresh start" to which it is entitled. *In re Trump Taj Mahal Associates,* 156 B.R. 928 (Bankr.D.N.J.1993), *aff'd, sub nom., Trump Taj Mahal Associates v. O'Hara (In re Trump Taj Mahal Associates),* No. 93-3571, 1993 WL 534494, 1993 U.S. Dist. LEXIS 17827 (D.N.J. December 13, 1993). We conclude that the totality of the circumstances weighs heavily against late filing of Appellees' claims.

Based on the foregoing, the record and the relevant law, we conclude that notice by publication was sufficient, that the claims were dischargeable and were discharged, and that the Appellees have failed to demonstrate excusable neglect. Accordingly, the Bankruptcy Court's Order entered August 2, 1993 will be reversed.