

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-1995

# Chemetron Corp. v. Jones

Precedential or Non-Precedential:

Docket 94-3371

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Chemetron Corp. v. Jones" (1995). *1995 Decisions.* Paper 310.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/310

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 94-3371


CHEMETRON CORPORATION

v.

PHYLLIS JASKEY JONES; PAMELA JO SWANSINGER;
SANDRA JASKEY HUJARSKI; PATRICIA HUJARSKI;
TERESA HUJARSKI ROSS; JANICE JASKEY BUTVIN;
FRANK BUTVIN; ROBERT BUTVIN; BRIAN BUTVIN;
SUSAN BUTVIN; WALTER ANIELSKI; ARLENE VANS;
YVONNE VANS BEKOSCKE; ANTHONY VANS; GREGORY
VANS; CAROL SCHULTZ; MARY SHAFFER; BRITTANY
CULL; STEPHANIE SCHAFFER,

Appellants.


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 93-cv-01582)


Argued February 3, 1995

Before: SCIRICA, ROTH and SAROKIN, <u>Circuit Judges</u>

(Opinion Filed December 18, 1995)


William Mitchell, Esq. (Argued)
Deborah J. Papushak, Esq.
Armstrong, Mitchell & Damiani
1725 The Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115-1091
        Attorneys for Appellants

Dennis G. Terez Esq. (Argued)
Squire, Sanders & Dempsey
4900 Society Center
127 Public Square
Cleveland, Ohio 44114-1304

George L. Cass, Esq.
Buchanan, Ingersoll, Professional Corporation
5800 USX Tower
600 Grant Street
Pittsburgh, PA 15219-2887
                    Attorneys for Appellee

OPINION OF THE COURT

ROTH, <u>Circuit Judge</u>:

In this appeal, we consider whether a group of former residents and occasional visitors to a neighborhood containing a toxic site were "known" creditors entitled to actual written notice of the debtor's bankruptcy filing and bar claims date. We hold that the members of this group were not known creditors and that therefore publication notice satisfied the requirements of due process. However, we also conclude that the district court failed to adequately consider whether the group's late filing was due to "excusable neglect" and that the district court improperly reached the issue of whether their claims had been discharged. Accordingly, we will affirm the district court's finding that

3

notice was sufficient but reverse its findings on excusable neglect and discharge.

## I.

Beginning in 1965, appellee Chemetron Corporation ("Chemetron") owned and operated a manufacturing facility on Harvard Avenue in Cuyahoga Heights, Ohio, as well as a nearby landfill on Bert Avenue in Newburgh Heights, Ohio. From 1965 to 1972, Chemetron manufactured an antimony oxide catalyst at the Harvard Avenue facility in a process that utilized depleted uranium. After catalyst production ceased in 1972, a portion of the Harvard Avenue facility was demolished. In 1975, Chemetron placed a quantity of rubble from the Harvard Avenue demolition in the Bert Avenue landfill. Later in 1975, Chemetron sold both sites to McGean Chemical Company. McGean Chemical Co. subsequently merged with Rohco, Inc., to become McGean-Rohco, Inc., the current owner of both sites.

Beginning in 1980, potential problems at the sites received significant attention from major newspapers in the Cleveland area. On July 8, 1980, the Cleveland Press reported on radiation levels at a site "near Harvard Avenue" in Newburgh Heights. On July 9, 1980, the Cleveland Plain Dealer published a similar article. Related articles appeared in The Plain Dealer on September 5 and September 12. On September 23, 1990, The Plain Dealer ran a front-page article on "Cuyahoga County's only known radioactive dump." App. at 289-95. The September 23 article quoted Phyllis Jones, the lead plaintiff in this case, discussing problems at the sites. Id. at 295.

3

Between 1980 and 1988, Chemetron was involved in periodic clean-up efforts at both sites at the direction of Nuclear Regulatory Commission. The efficacy of these efforts remains dubious.

On February 20, 1988, Chemetron and other debtors filed a joint petition for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Pennsylvania. Following Bankruptcy Rule 3003(c)(3), the bankruptcy court issued a bar date order, fixing the bar claims date at May 31, 1988. Stated simply, under bankruptcy law, the bar claims date is the last day on which existing claims can be filed against the debtor. See discussion Part III, infra.

The bar date order required that actual notice be provided to all persons known to have claims against the debtors. The order required notice to all other claimants by publication in the national editions of the New York Times and Wall Street Journal. It is undisputed that the debtors complied with the order and, in addition, voluntarily published notice in seven other newspapers in areas where they were doing business at the time of the filing. On July 12, 1990, the bankruptcy court confirmed Chemetron's reorganization plan.

On March 2, 1992, almost four years after the bar claims date, twelve years after the first newspaper articles detailing problems at the sites, and two years after her comments in The Plain Dealer's front page article, Phyllis Jones and fourteen other individuals brought suit against Chemetron, McGean Chemical Co., and McGean-Rohco, Inc., in the Court of Common

4

Pleas of Cuyahoga County, Ohio.  The suit was later amended to name a total of twenty-one plaintiffs.  The gravamen of the complaint alleged injury from exposure to toxic chemicals as a result of time spent in the Bert Avenue area.

Plaintiffs' ties to the Bert Avenue area centered around visits to or occupancy of two houses in the vicinity. Only two members of the group actually occupied the properties during the period from 1965-1975 when Chemetron owned the sites. The other members of the group visited the properties periodically, ranging from "several times per week," App. at 8, to "weekly," App. at 14, to "monthly," App. at 16, to "occasional" visits, App. at 9.  The record indicates that the visits stopped in 1985, three years prior to Chemetron's bankruptcy petition.  None of the plaintiffs currently resides near either site.  Sixteen of the plaintiffs still reside in Ohio.  Five of the plaintiffs live in Texas.

In the state court action, Chemetron moved to dismiss the suit, arguing that any such claim had been discharged in bankruptcy.  The plaintiffs responded by seeking permission from the bankruptcy court to file late claims.  By separate motion, plaintiffs sought a declaration from the bankruptcy court that their claims had not been discharged by the reorganization plan. This second motion was converted to an adversary proceeding.

On August 2, 1993, the bankruptcy court granted the motion to file late claims, finding that plaintiffs were known creditors entitled to actual notice of the bankruptcy proceeding and bar claims date.  The bankruptcy court also, sua sponte,

5

permitted the plaintiffs to proceed against Chemetron in the Ohio lawsuit and dismissed without prejudice the adversary proceeding.

Chemetron appealed to the district court, which reversed the grant of the motion to file late claims. The district court held that plaintiffs were not known creditors and that publication notice was sufficient. The district court then concluded, without explanation, that plaintiffs' "claims were dischargeable and were discharged." Chemetron v. Jones (In re Allegheny Int'l), 170 B.R. 83, 90 (W.D. Pa. 1994). This appeal followed.

## II.

Jurisdiction in this appeal is proper pursuant to 28 U.S.C. § 158(d). We review the bankruptcy court's findings of fact for clear error, the same standard of review used by the district court. See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981). When reviewing mixed questions of law and fact, we exercise plenary review over the bankruptcy court's choice, interpretation, and application of the underlying rule of law. See Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991), cert. denied, 503 U.S. 937 (1992).

## III.

The central issue before us is whether plaintiffs were "known" or "unknown" claimants at the time of the bankruptcy court's order. If claimants were "known" creditors, then due process entitled them to actual notice of the bankruptcy proceedings. Absent such notice, their suit may proceed. If

6

claimants were "unknown" creditors, however, then notice by publication was sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief.  We hold that the claimants in the instant case were "unknown" creditors.

Our inquiry is guided by one of the principal purposes of bankruptcy law, to secure within a limited period the prompt and effectual administration and settlement of the debtor's estate.  Katchen v. Landy, 382 U.S. 323, 328 (1966).  To this end, Bankruptcy Rule 3003(c) requires that claimants against an estate in bankruptcy under Chapter 11 file timely proofs of claim in order to participate in a reorganization.  Under Rule 3003(c)(3), these proofs of claim must be filed prior to a bar date established by the bankruptcy court.  After the passage of the bar claims date, a claimant cannot participate in the reorganization unless she establishes sufficient grounds for the failure to file a proof of claim.  See In re Best Products Co., 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992).  Except for narrow statutory exceptions not relevant here, confirmation of the debtor's reorganization plan discharges all prior claims against the debtor.  11 U.S.C. § 1141; Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.), 125 B.R. 650, 654 (M.D. Fla. 1991).

Inadequate notice is a defect which precludes discharge of a claim in bankruptcy.  Due process requires notice that is "reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a

7

reasonable time for a response." Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.), 62 F.3d 730, 735 (5th Cir. 1995) (citation omitted).  For notice purposes, bankruptcy law divides claimants into two types, "known" and "unknown."  In re Charter Co., 125 B.R. 650, 654 (M.D. Fla. 1991).  Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date.  City of New York v. New York, N. H. & H. R. Co., 344 U.S. 293, 296 (1953).  For unknown claimants, notification by publication will generally suffice.  See In re Argonaut Fin. Serv., Inc., 164 B.R. 107, 112 (N.D. Cal. 1994); In re Thomas McKinnon Sec., Inc., 130 B.R. 717, 719-20 (Bankr. S.D.N.Y. 1991).

As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor."  Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988).  An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950).[1]

---

[1]     Although Mullane involved the notice due beneficiaries on judicial settlement of accounts by the trustee of a common trust fund, subsequent courts have interpreted the case to set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases.  See In re Pettibone Corp., 162 B.R. 791, 806 (Bankr. N.D. Ill. 1994); In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993).

A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." Mullane, 339 U.S. at 317. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." In re Charter Co., 125 B.R. 650, 654 (M.D. Fla. 1991).

Precedent demonstrates that what is required is not a vast, open-ended investigation. See Mullane, 339 U.S. at 317 ("Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee."); see also Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.), 1993 U.S. Dist. LEXIS 17827 at *9 (D.N.J. Dec. 13, 1993) (explaining that "those creditors who hold only conceivable, conjectural or speculative claims" are unknown). The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.[2] Only those claimants who are identifiable through a

_____

[2] Although some courts have held, regardless of the circumstances, that the "reasonably ascertainable" standard requires only an examination of the debtor's books and records, without an analysis of the specific facts of each case, see e.g., In Re Best Products Co., 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992); In re Texaco, Inc., 182 B.R. 937, 955 (Bankr. S.D.N.Y.

9

diligent search are "reasonably ascertainable" and hence "known" creditors.

In the instant case, the bankruptcy court failed to apply the "reasonably ascertainable" standard. It instead crafted a "reasonably foreseeable" test from dictum in In re Brooks Fashion Stores, Inc., 124 B.R. 436 (Bankr. S.D.N.Y. 1991). In applying this test, the bankruptcy court found that "Chemetron knew or should have known that it was reasonably foreseeable that it could suffer claims from individuals living near the Bert Avenue Dump. . . ." It therefore found that claimants were known creditors.

We hold that in substituting a broad "reasonably foreseeable" test for the "reasonably ascertainable" standard, the bankruptcy court applied an incorrect rule of law. This constitutes clear error. The bankruptcy court's expansive test departed from established rules of law and produced a result in conflict with other decisions. See In re New York Trap Rock Corp., 153 B.R. 642, 646 (Bankr. S.D.N.Y. 1993) (holding government agency that failed to file claim for environmental cleanup to be an "unknown creditor" even where debtor had entered real estate contract with another agency of same governmental

1995), we do not construe it so narrowly. Situations may arise when creditors are "reasonably ascertainable," although not identifiable through the debtor's books and records. See, e.g., Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. at 491 (hospital's claim against deceased patient's estate possibly reasonably ascertainable). We need not address this possibility precisely, because, as we discuss, plantiffs' claims in this case are so speculative that the identities of the plaintiffs could not be ascertained with "reasonably diligent efforts." Mennonite, 462 U.S. at 798, n.4.

10

entity); see also In re Trans World Airlines, Inc., 182 B.R. 102, 106 (D. Del. 1995) (holding claim unknown where plaintiffs had not filed suit until one year after bar claims date); In re Texaco Inc., 182 B.R. 937, 954-55 (Bankr. S.D.N.Y. 1995) (holding claim unknown where owners of adjacent land filed environmental action after bar claims date); In re Hunt, 146 B.R. 178, 182 (Bankr. N.D. Tex. 1992) (holding claims unknown where plaintiffs filed state court suit and counterclaim after bar claims date). Even if we were writing on a blank slate, we would reject the bankruptcy court's expansive standard. Put simply, such a test would place an impossible burden on debtors.

A review of the facts in the case at bar reveals why the bankruptcy court's standard should not be followed. None of the claimants involved currently resides near either site. The claimants instead are scattered across Ohio and as far away as Texas. We are hard-pressed to conceive of any way the debtor could identify, locate, and provide actual notice to these claimants.

It has been suggested that Chemetron could have conducted a title search on all properties surrounding the sites to determine all persons who might have lived in the area during the twenty years between Chemetron's operation of the sites and the Chapter 11 proceeding. We decline to chart a jurisprudential course through a Scylla of causational difficulties and a Charybdis of practical concerns.

The causational difficulties are manifold and apparent. Under the bankruptcy court's rule, the debtor would have to

11

notify all reasonably foreseeable claimants, a determination that would rise and fall on potentially attenuated and certainly ambiguous causal nexi. At the most basic level, it remains unclear in the instant case what geographic area might be affected and hence how great an expanse the debtor's title search need cover. There is no indication whether a sufficient search would address properties one mile from the sites or one hundred miles away. The geographic area would presumably be affected by the potential for contaminant migration by air, water, or other carrier, further expanding the necessary notification area. Nor is the temporal dimension any more defined. With lingering contaminants and slow rates of decay, there would be no reason to limit future debtors to searching only for those exposed during their periods of ownership. And while we might be urged to bring these determinations under Mullane's "reasonably calculated under the circumstances" umbrella, 339 U.S. at 314, we hesitate to thrust the judiciary into a domain where decisions turn on rarely pellucid and often disputed scientific studies, requiring different varieties of technical expertise from case to case. In light of these problems of causation, the bankruptcy court's rule is unworkable.

We also anticipate grave practical difficulties with the bankruptcy court's broad notice requirement. Even if Chemetron had been required to search all potentially relevant title documents, its efforts would have come to no avail in this case. The vast majority of the claimants involved here were not property owners, but guests. No title search could reveal the

12

identity of claimants who merely visited houses in the vicinity of the sites at some point in the distant past, and we decline to impose any Orwellian monitoring requirements on Chemetron and similarly situated corporations. Moreover, as demonstrated by the claimants here, debtors also face the problem of identifying all individuals whose parents might have lived in or visited houses in the vicinity of the site. And the problems of ascertaining, let alone notifying, all such persons implicate yet again all the difficulties of causation previously discussed.

Such an investigation, which would be required by the bankruptcy court's finding that claimants are known creditors, clearly contradicts both the caselaw cited above and common sense. Creditors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates. We reject the "reasonably foreseeable" test and follow the "reasonably ascertainable" standard.

In reaching this result, we are not unsympathetic to the alleged injury suffered by the claimants in this case. We stress that our holding addresses the burden placed on the bankruptcy debtor to provide actual notice to potential claimants, not the merits of a timely and properly filed tort suit. Where a debtor has sought the protection of bankruptcy law, however, procedural protections such as the bar claims date apply. These provisions cannot be circumvented by forcing debtors to anticipate speculative suits based on lengthy chains

13

of causation.  Accordingly, the bankruptcy court erred in finding that the claimants in this case were "known" creditors, and the district court's decision reversing the bankruptcy court on this finding will therefore be affirmed.

IV.

Having held that claimants were "unknown" creditors, we have little difficulty holding that the notice which Chemetron published in the New York Times and the Wall Street Journal was sufficient.  It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process.  New York, 344 U.S. at 296.  Such notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane, 339 U.S. at 314.  We find that Chemetron's notice met this standard.

Claimants argue that, given Chemetron's ongoing difficulties in cleaning up the Cleveland area sites as well as Chemetron's knowledge of the hazardous materials deposited there, Chemetron should have published notice in a Cleveland area paper.  This argument fails.

"It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read."  Best Products, 140 B.R. at 358.  Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is

conducting business.  See, e.g., Brown v. Seaman Furniture Co.,
171 B.R. 26 (E.D. Pa. 1994) (holding publication in local and
national editions of the New York Times sufficient notice to
claimant in Pennsylvania); In re Chicago, Milwaukee, St. Paul &
Pacific R.R. Co., 112 B.R. 920 (N.D. Ill. 1990) (holding
publication notice in the Wall Street Journal adequate under
bankruptcy law);  Wright v. Placid Oil Co., 107 B.R. 104 (N.D.
Tex. 1989) (holding publication in The Wall Street Journal
sufficient notice to unknown creditor injured in Louisiana).
Furthermore, claimants' argument is undermined by the fact that
none of the claimants resided near the Cleveland sites at the
time of the publication notice.  Even publication in a Cleveland
newspaper would not have reached the claimants currently residing
in Texas or any other potential claimants who had moved away from
Cleveland.

Because Chemetron's publication notice was reasonably
designed to reach all interested parties, the district court's
finding that the notice was sufficient to apprise unknown parties
of the claims bar date is affirmed.

V.

Although we find little merit in claimants' notice
arguments, we believe their claim of "excusable neglect" received
inadequate consideration.  Bankruptcy Rule 9006(b)(1) empowers a
bankruptcy court to permit a creditor to file a late claim if the
movant's failure to comply with an earlier deadline "was the
result of excusable neglect."  See Pioneer Inv. Serv. Co. v.
Brunswick Assocs. Ltd. Partnership, ___ U.S. ___, ___, 113 S. Ct.

15

1489, 1491-92 (1993). In the instant case, because claimants are unknown creditors and Chemetron's publication notice was sufficient, claimants must show that their failure to file in a timely manner was due to "excusable neglect;" otherwise, their claims arising pre-petition will be barred. See Best Products, 140 B.R. at 359.

The determination whether a party's neglect of a bar date is "excusable" is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file. See Pioneer, 113 S. Ct. at 1498. The considerations to be weighed include:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id.[3]

The bankruptcy court, in considering whether claimants should be permitted to file a late claim under the totality of the circumstances, wrote:

---

[3] As the district court properly noted, it is unsettled whether "excusable neglect remains a viable defense for filing a late proof of claim when the claimant is entitled to only publication notice." Chemetron, 170 B.R. at 89 (citing Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.), 1993 U.S. Dist. LEXIS 17827 at *18 n.7 (D.N.J. Dec. 13, 1993)).
Under Bankruptcy Rule 9006(b), which allows the bankruptcy court to permit a late filing in cases of "excusable neglect," no differentiation is made between known and unknown creditors. Accordingly, claimants are not foreclosed from pursuing an "excusable neglect" defense in the instant matter.

This court's understanding of In re Remington Rand is that acting promptly and diligently is but one factor when a court is considering the totality of the circumstances. The court finds that [claimants], while not acting very promptly or diligently, were not so sluggish as to outweigh the fact that Chemetron did not provide reasonably calculated notice to alert [claimants] of the bankruptcy proceedings and the claims Bar Date. Therefore, the totality of the circumstances dictate that [claimants] are entitled to file a late claim.

Jones v. Chemetron Corp. (In re Allegheny Int'l, Inc.), Ch. 11 Case No. 88-00448 JLC, Adv. No. 92-2418, slip op. at 11 (Bankr. W.D. Pa. July 24, 1993). This analysis failed to adequately consider the totality of the circumstances presented. Not only was the bankruptcy court incorrect in its assumption that claimants were known creditors entitled to actual notice, but the court failed to make additional relevant factual findings, including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.

On appeal, the district court undertook its own review of the record to determine whether the totality of the circumstances supported claimants' filing of late claims. The district court wrote:

We agree with the Bankruptcy Court that [claimants] did not act promptly or diligently. Their motion to file a late claim occurred more than four years after the bar date, two years after the Plan of Reorganization had been confirmed and twelve years after media and neighborhood attention first focused on the hazardous substances at the Bert Avenue Site. That [claimants] were allegedly unaware of their claims does not constitute excusable neglect. To permit [claimants] to file a late claim would prejudice Chemetron by denying a "fresh start" to which it is entitled. We conclude

17

that the totality of the circumstances weighs heavily
against late filing of [claimants'] claims.

Chemetron, 170 B.R. at 89-90 (citations omitted).

Although the totality of the circumstances analysis
conducted by the district court was more appropriate than that
conducted by the bankruptcy court, the district court's analysis
also fell short of that required under Pioneer. The district
court failed to undertake a comprehensive analysis of how the
claimants' late filing would prejudice Chemetron, and also failed
to consider the role that Chemetron might have played in
contributing to the delay. Accordingly, we remand this issue to
the bankruptcy court, with directions that the bankruptcy court
undertake a more comprehensive and thorough determination of
whether the totality of the circumstances support claimants'
defense of "excusable neglect."

VI.

Finally, we disagree with the district court's
treatment of the discharge issue. In the final paragraph of its
memorandum and order, the district court concluded that the
instant claims "were dischargeable and were discharged."
Chemetron, 170 B.R. at 90. The bankruptcy court, however, had
declined to reach the issue of discharge, deciding instead to
dismiss claimants' adversary proceeding without prejudice. In
fact, the district court itself noted that "[t]he Bankruptcy
Court reserved ruling on the issue whether Appellants' claims are
discharged in light of the permission to file the late claims."

18

_Id_. at 86. We hold that the district court improperly reached the issue of discharge.

Chemetron contends that the issue of discharge was properly before the district court because Chemetron, in its notice of appeal to the district court, expressly appealed from the memorandum opinion and final order of the bankruptcy court in both the Chapter 11 proceeding and "the related Adversary Proceeding." This reference to the adversary proceeding, however, was not sufficient to create jurisdiction in the district court. Because the bankruptcy court reserved ruling on the issue of discharge, the bankruptcy court's dismissal without prejudice was not a final appealable order under 28 U.S.C. §158(d) and therefore was not properly before the district court. Accordingly, we will vacate the district court's ruling on discharge and remand this issue to the bankruptcy court.

## VII.

For these reasons, we will affirm the district court's rulings that claimants were known creditors and that Chemetron's publication notice was sufficient. We will vacate and remand to the bankruptcy court the district court's judgment that claimants failed to demonstrate excusable neglect. We will also vacate and remand to the bankruptcy court the district court's ruling on discharge.

19

No. 94-3371

SAROKIN, Circuit Judge, concurring in the judgment.


I concur with the majority's judgment to affirm. I write separately, however, because I disagree with the majority's analysis regarding the definition of a "known" creditor entitled to actual notice under the law. The majority rejects the "reasonably foreseeable" test in favor of the "reasonably ascertainable" test. I believe that both are applicable.


I.

The "reasonably foreseeable" test determines which persons are entitled to receive notice. The "reasonably ascertainable" test determines the type of notice these persons are entitled to receive. All reasonably foreseeable claimants are entitled to receive some form of notice. Those who are reasonably ascertainable are entitled to actual notice. Those who are not are entitled to constructive notice -- usually some form of publication reasonably calculated to reach them.

The bankruptcy court adopted the following standard to evaluate who qualifies as a known creditor in a bankruptcy proceeding:

> [I]f at the time of the filing it is
> reasonably foreseeable to a debtor,
> who is or should be aware of the potential consequences
> of its actions, that a party that is
> foreseeable will most likely file a claim

20

> against the debtor, that party is a "known"
> creditor of the debtor.  Furthermore, the
> fact that a debtor does not know the name and
> address of a creditor does not prevent that
> creditor from being "known."

In re Allegheny International, Inc., No. 88-00448, typescript at 5-6 (Bankr. W.D. Pa. July 14, 1993).  The court's standard would entitle a party whose claim was "reasonably foreseeable" to actual notice irrespective of whether or not that party's name and address was readily ascertainable.  That result is not only illogical; it is contrary to Supreme Court jurisprudence.  Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988).

I do not believe, however, that in restoring the "ascertainable" test to its proper place, as the majority does, we need go so far as to discard the "reasonably foreseeable" standard entirely.  These tests are not mutually exclusive, or even at odds.  They address separate issues.  The "reasonably foreseeable" test has to do with whether the debtor knew or should have known that a claim would be brought; the "reasonably ascertainable" test has to do with the debtor's ability to learn the identity and location of the potential claimant or claimants.

The manufacturer of a product which it knows to be defective and who filed for bankruptcy should be under an obligation to give actual notice of the proceedings to known purchasers and users of its products, even if they have made no claim.  They may not have done so because the injury had not yet manifested itself or they otherwise were unaware of the risks of such injury.  Absent such requirement, if the harmful effects of

21

the product did not manifest themselves for some period of time, consumers could be barred from relief for their injuries.

A rule whereby individuals whose claims are reasonably foreseeable are deemed "known" creditors if their identity and location is reasonably ascertainable would go a long way toward addressing these interests.  Under such a rule, the following two steps would be required as a prerequisite to mandating actual notice to the tort claimants.  First, the claims must be reasonably foreseeable.  If they are reasonably foreseeable, then actual notice must be given to those claimants who are reasonably ascertainable.  If there is a class or category of foreseeable claimants whose identity and/or location cannot be reasonably ascertained, then they are not "known creditors" entitled to actual notice (although they should receive substituted notice through reasonable means most likely to reach them).  Such a result strikes the proper balance between the various purposes of bankruptcy law, which is concerned not merely with affording a fresh start to those who warrant it, but also with protecting the interests of creditors and claimants who may be adversely affected by the bankruptcy proceeding.

This result is clearly supported by the case law.  The Mullane court was careful to limit its holding to the facts of that case, noting that "certain notice" was unnecessary for "beneficiaries whose interests are either conjectural or future . . . in view of the character of the proceedings and the nature of the interests  here involved."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950) (emphasis added).

22

Furthermore, a claimant's interests are not "conjectural or future" simply because a lawsuit has not been filed yet. These interests exist from the time of the tortious act, not just from the time the claimant seeks to vindicate them in court.[4]

## II.

Under this rule, I would find that it was not reasonably foreseeable that plaintiffs would file claims against Chemetron. As the district court noted in its opinion, throughout the early 1980s both the Nuclear Regulatory Commission and the Environmental Protection Agency time and again reassured both Chemetron and local residents that the radiations from the Bert Avenue site presented no serious safety or health risk to the surrounding neighborhood. Chemetron Corp. v. Jones, et al., No. 93-1582, typescript at 11 (W.D. Penn. June 11, 1994). Therefore, "[i]f Chemetron gave any thought to the subject, it

---

[4] The majority cites Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.), 1993 WL 534494 (D.N.J. Dec. 13, 1993), for the proposition that "those creditors who hold only conceivable, conjectural, or speculative claims" are unknown. See Majority Opinion, typescript at 9. Trump Taj Mahal is a memorandum opinion by a district court, not reported in the relevant Reporter. As a district court opinion, it is not binding upon us. As an unreported memorandum opinion, it has no precedential value.

The Supreme Court, in Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478 (1988) held that "it is reasonable to dispense with actual notice to those with mere 'conjectural' claims." Id. at 490 (emphasis added). The Random House College Dictionary describes "conjectural" as "of the nature of or involving conjecture; problematical." Insofar as "problematical" suggests that the event is more likely than not not to occur, a claim that is "reasonably foreseeable" is not "problematical."

23

was reasonable to assume that claims would not be filed because of the assurances of these agencies that the Bert Avenue Site posed no health risk to the neighborhood." Id. Therefore, "there was no reason for Chemetron to assume in 1988 that there would be claims from residents for ailments caused by exposure to the contamination from the Sites. At most, any future claim was speculative." Id. at 12. Under the facts of this case, I entirely agree with the district court's conclusion that "Appellees were not foreseeable claimants and, accordingly, were unknown creditors." Id. Since the claims were not foreseeable there is no reason to address whether the claimants were reasonably ascertainable.

### III.

For the reasons stated above, I concur with the majority's judgment, though not with its reasoning in this one respect.