In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-2916

IN RE: USA GYMNASTICS,[*]

*Debtor*.


JANE DOE J.J.,

*Creditor-Appellant*,

*v.*

WILLIAM L. BETTINELLI,[†]

*Party-in-Interest-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-2507 — **Sarah Evans Barker**, *Judge*.

_____

ARGUED JUNE 7, 2022 — DECIDED JULY 18, 2022

_____

_____

[*] USA Gymnastics is not participating in this appeal.

[†] We granted a motion substituting William L. Bettinelli, the Settlement Trustee of the USA Gymnastics Trust, for the Additional Tort Claimants Committee of Sexual Abuse Survivors, an interested party. See Fed. R. App. P. 43(b).

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

KIRSCH, *Circuit Judge*. During the decade that she was a member of USA Gymnastics, Jane Doe J.J. was one of the hundreds of gymnasts sexually assaulted by Larry Nassar, a physician for the organization. In response to the overwhelming number of claims against it based on Nassar's conduct, USA Gymnastics filed for bankruptcy. The bankruptcy court set a deadline for any claimant to file a proof of claim, but J.J. did not receive actual notice of this deadline and filed her proof of claim five months late. The bankruptcy court treated her claim as untimely, and the district court affirmed.

On appeal to this court, J.J. argues that she was entitled to actual notice because USA Gymnastics should have known that she was a potential claimant. According to J.J., USA Gymnastics needed to retain medical records under Michigan law and thus should have known that she had been seen by Nassar for medical care. But we lack any evidence that USA Gymnastics had these records, and her argument that Michigan law required USA Gymnastics' retention of any relevant documents is dubious. We therefore affirm.

I

From the ages of 7 to 17, J.J. competed as a member of USA Gymnastics. During this time, Nassar acted as J.J.'s physician and sexually assaulted her. Important for this appeal, the record does not disclose that USA Gymnastics had access to or possession of J.J.'s medical records showing her visits with Nassar, as J.J.'s counsel conceded at oral argument.

In 2018, USA Gymnastics filed for Chapter 11 bankruptcy. The bankruptcy court set a deadline of April 2019 for all

claimants, including sexual-assault survivors, to file a proof of claim. USA Gymnastics mailed notices to individuals it viewed as potential claimants, including, among others: all known survivors who had filed or threatened to file lawsuits against USA Gymnastics alleging sexual abuse, had reported abuse to USA Gymnastics, had entered into a settlement agreement with USA Gymnastics stemming from allegations of abuse, or had received payment from USA Gymnastics as a result of an allegation of abuse. This amounted to more than 1,300 individuals. USA Gymnastics also emailed copies of the notice to more than 360,000 current and former members of the organization. Beyond these mailings, USA Gymnastics executed a constructive-notice campaign. It placed information about the bar date on its website, its social media pages, in *USA Today*, and in gymnastics journals, podcasts, and websites.

J.J. did not learn about the bar deadline until after it had passed. After telling her parents that she had been assaulted by Nassar, she retained legal counsel, who helped her file a proof of claim. By the time she filed her proof of claim, it was five months late.

J.J. moved for the bankruptcy court to treat her claim as timely. As relevant here, she argued that the court should treat her claim as timely because she was entitled to actual notice. The pertinent body appointed to represent sexual-assault claimants' interests—the Additional Tort Claimants Committee of Sexual Abuse Survivors—objected to J.J.'s request. It contended that J.J. was entitled only to constructive notice, which she had received through USA Gymnastics' media campaigns.

The bankruptcy court agreed with the Committee's argument and denied J.J.'s motion, finding her entitled only to constructive—rather than actual—notice. The district court affirmed, and J.J. has appealed.

II

J.J. argues that she was entitled to actual notice and that the courts below erred in holding otherwise. We review the bankruptcy court's factual findings for clear error and the legal conclusions of both the bankruptcy and district courts de novo. *In re Dimas*, 14 F.4th 634, 639–40 (7th Cir. 2021).

Creditors must receive adequate notice before their claims can be discharged in bankruptcy. See *Fogel v. Zell*, 221 F.3d 955, 962–63 (7th Cir. 2000) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 318 (1950)); *Dahlin v. Lyondell Chem. Co.*, 881 F.3d 599, 604 (8th Cir. 2018). A notice's adequacy generally depends on whether a creditor is reasonably ascertainable. See *Fogel*, 221 F.3d at 963; *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–90 (1988). If so, the creditor is entitled to actual notice; if not, the creditor is typically entitled only to constructive notice. See *Fogel*, 221 F.3d at 963 ("If his name and address are reasonably ascertainable, he is entitled to have that information sent directly to him, but if not, then publication of the information in the newspaper or other periodical that he's most likely to see is permitted."); *Dahlin*, 881 F.3d at 604.

A creditor qualifies as reasonably ascertainable if the debtor could uncover the creditor's claim and identity using only "reasonably diligent efforts." *Tulsa Pro. Collection Servs., Inc.*, 485 U.S. at 490 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)); see *In re Placid Oil Co.*,

753 F.3d 151, 154–55 (5th Cir. 2014) (framing the question as whether the debtor possesses "some specific information … reasonably suggest[ing] both the claim for which the debtor may be liable and the entity to whom [the debtor] would be liable") (citation omitted). In general, a creditor is reasonably ascertainable only if the debtor has information about the creditor's claim in its possession. See *Dahlin*, 881 F.3d at 606 (citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346–47 (3d Cir. 1995)).

J.J. contends that her identity as a tort victim was reasonably ascertainable to USA Gymnastics. But J.J. fails to point to any evidence that USA Gymnastics possessed medical documentation of her interactions with Nassar. See *Dahlin*, 881 F.3d at 606 (whether a creditor is reasonably ascertainable generally depends only on information in the debtor's own books and records). That shortcoming doesn't foreclose her argument, J.J. argues, because USA Gymnastics had a responsibility to know that Nassar had seen her for medical treatment under Michigan's recordkeeping requirements. See *In re Motors Liquidation Co.*, 829 F.3d 135, 159–60 (2d Cir. 2016) (creditors considered reasonably ascertainable based on unambiguous federal record-keeping requirement). But we do not find such a clear legal obligation under Michigan law. The only statute she cites, Mich. Comp. Laws § 333.16213(1), applies solely to "natural person[s]," *id.* § 333.1105(1); see *id.* § 333.16101(2), which USA Gymnastics is not. The only other potentially relevant Michigan recordkeeping statute we've found (which was not cited by J.J.) applies to "health facilit[ies] or agenc[ies]," *id.* § 333.20175(1), and defines those terms with an enumerated list of specific categories of entities, see *id.* § 333.20106(1). USA Gymnastics does not appear to fit within any of those categories. Cf. *Kuznar v. Raksha Corp.*, 750

N.W.2d 121, 126–27 (Mich. 2008) (holding that a pharmacy is not a "health facility or agency"); *Sabbagh v. Hamilton Psych. Servs., PLC*, 941 N.W.2d 685, 694–95 (Mich. Ct. App. 2019) (holding that a psychological practice and a human resources company fail to satisfy the statute's definition of "health facility or agency").

Because J.J. has neither presented evidence that USA Gymnastics had records of her medical visits with Nassar nor shown that Michigan law required it to possess such records, we agree with the bankruptcy and district courts that J.J. was not a reasonably ascertainable creditor. She was thus entitled only to constructive notice, the sufficiency of which she does not contest.

AFFIRMED